UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BAZOUMANA FOFANA,

           Petitioner,

      -v-                             12-CV-1178-JTC

ERIC HOLDER, Attorney General,
JANET NAPOLITANO, Secretary of DHS,
MICHAEL PHILIPS, District Director,
TODD TRYON, Asst. Field Office Director,
and
IMMIGRATION AND CUSTOMS
ENFORCEMENT,

           Respondents.

---

## INTRODUCTION

Petitioner Bazoumana Fofana, an alien under a final order of removal from the United States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from detention in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (collectively, "DHS"), pending the execution of a final immigration order of removal issued against him. Item 1. As directed by this court's order entered December 12, 2012 (Item 2), respondent[1] has submitted an answer and return (Item 4), along with an accompanying memorandum of law (Item 5), and petitioner has submitted a response in reply (Item 7).

---

[1] The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; *see also* section 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

For the reasons that follow, the petition is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner, a native and citizen of the Republic of Cote d'Ivoire ("Ivory Coast'), entered the United States at New York, New York, on or about June 20, 1996 as a non-immigrant visitor with authorization to remain in the United States for a temporary period not to exceed one year. *See* Item 4-1 (Payan Decl., Exh. 1), ¶ 5; *see also* Item 1, ¶ 6. On April 19, 2011, petitioner was convicted of sex trafficking and was sentenced to a term of incarceration of one to three years. *See* Item 4-1, ¶ 6.

On May 9, 2011, while at the Ulster Correctional Facility in Napanoch, New York, petitioner was encountered by immigration officers and an immigration detainer was lodged against him upon verification of his immigration status. *See* Item 4-1, ¶ 7. Deportation proceedings were commenced by a Notice to Appear ("NTA") served on November 21, 2011, which charged petitioner with being subject to removal from the United States pursuant to § 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B), as an alien who has remained in the United States for a longer time than permitted. *Id.* at 8; Exh. A, pp. 13-14.

On March 30, 2012, upon his release from custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), petitioner was received into DHS custody. Item 4-1, ¶ 9. On May 9, 2012, petitioner was served with Additional Charges of Inadmissibility/Deportability including the factual allegation that petitioner had been convicted of the crime of sex trafficking. *Id.,* ¶ 10; Exh. A, p. 12. On May 16, 2012, an immigration judge ("IJ") terminated removal proceedings against

petitioner on the basis that petitioner was amendable to an Administrative Removal Order pursuant to INA § 238, 8 U.S.C. § 1228. *Id.,* ¶ 11; Exh. A, pp. 9-10.

On May 17, 2012, petitioner was served with a Notice of Intent to Issue a Final Administrative Removal Order which charged him with being removable from the United States, pursuant to INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien who has been convicted of an aggravated felony. Item 4-1, ¶ 12; Exh. A, pp. 4, 7-8. On May 22, 2012, petitioner was served with a Final Administrative Removal Order. *Id.,* ¶ 13; Exh. A, pp. 4, 6.

On August 7, 2012, DHS sent a presentation packet to the Embassy of the Republic of Ivory Coast (the "Embassy") in Washington, D.C., requesting that a travel document be issued for petitioner's removal. Item 4-1, ¶ 16; Exh. A, p. 17. DHS records indicate that DHS representatives have attempted to contact or have contacted the Embassy on more than ten occasions from August 2012 through January 2013. *Id.,* ¶ 17. At the present time, the request for a travel document for petitioner remains pending with the Embassy. *Id.,* ¶ 19.   On August 21, 2012, petitioner was notified that, upon review of his custody status and based on the totality of information available, DHS had determined that he would be a threat to the community and a flight risk of flight, and detention would be continued pending removal. Item 4-1, ¶ 22; Exh. A, pp. 3-4.

On November 8, 2012, a panel was convened at the Buffalo Federal Detention Facility to conduct a further review of petitioner's custody status, including an in-person interview. Item 4-1, ¶ 23. Following completion of the file review and interview, petitioner was notified on November 27, 2012, that DHS had determined to continue his detention

in DHS custody. *Id.*, ¶ 24; Exh. A, p. 2.

Meanwhile, petitioner filed this action on November 28, 2012, seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that his continued detention in post-removal-order custody is unlawful since it has exceeded the presumptively reasonable six-month period established under the due process standards set forth by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## DISCUSSION

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas*, 533 U.S. at 687 (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings, and pending removal following the entry of a final order of removal, are governed by two separate provisions of the INA – respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order. In this case, petitioner's detention at the time he filed his habeas petition was pursuant to INA § 241(a), which

requires the Attorney General to accomplish an alien's removal from the United States within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (i)  The date the order of removal becomes administratively final;
> (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or
> (iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory.  *See* 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General *shall* detain the alien."). The statute also authorizes the Attorney General to continue detention of criminal aliens–*i.e.*, aliens ordered removed due to conviction of a crime (like petitioner here)–beyond the expiration of the ninety-day removal period if it is determined that the alien "is a risk to the community or unlikely to comply with the order of removal …."  8 U.S.C. § 1231(a)(6).[2]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition

---

[2]INA § 241(a)(6) provides in full as follows:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

against depriving a person of their liberty without due process.  The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States.  *Zadvydas*, 533 U.S. at 699-700.  Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …."  *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal.  Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future to the country to which the alien was ordered removed and there is no third country willing to accept the alien."  8 C.F.R. § 241.13(d)(1).  The written request must include "information

sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents." 8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released. 8 C.F.R. § 241.13(g)(1). However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination. *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner was received into DHS custody on March

30, 2012, upon his release from state custody.  *See* Item 4-1, ¶ 9.  On May 21, 2012, petitioner was ordered removed to the Ivory Coast pursuant to a Final Administrative Removal Order.  *Id.,* ¶ 13. As an alien under a final order of removal, petitioner's detention was mandatory for the ninety-day removal period pursuant to INA § 241(a).  Thereafter, upon determining that petitioner posed a significant threat to the safety and security of the community and a risk of flight, DHS was authorized under INA § 241(a)(6) to continue the detention beyond the expiration of the ninety-day period for "a period reasonably necessary to secure removal."  *Zadvydas*, 533 U.S. at 699-700.

Under *Zadvydas*, the first six months of detention following a final removal order are "presumptively reasonable."  *Zadvydas*, 533 U.S. at 701.  Once the six-month period has passed, the burden shifts to the alien detainee to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  *Id.*  Only if the alien makes this showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut" the alien's showing that there is no significant likelihood that he or she will be deported in the reasonably foreseeable future.  *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights.").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*.  The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he can be removed to the Ivory Coast in the reasonably foreseeable future.  There are no

institutional barriers to petitioner's removal to his native country and the Ivory Coast has not refused to accept him.  The available records reflect that there has been regular and continuing communications between DHS and the Embassy (Item 4-1, ¶ 17), and there is nothing to be found in the submissions before the court that would indicate a likelihood that Ivory Coast authorities are inclined to deny the request.  To the contrary, the available evidence shows that in recent years, DHS has successfully repatriated several aliens to the Ivory Coast, and that a general delay in alien removals has occurred during the past year due to political unrest and pending elections.  *See id.* at ¶ 21.[3]  These circumstances provide a reasonable basis for DHS's expectation that the verification required for the issuance of a travel document will be accomplished in the reasonably foreseeable future, after which time the necessary travel arrangements may be made for petitioner's release from custody and his repatriation to the Ivory Coast.

Significantly, petitioner has provided no evidence to contradict DHS's expectation that the issuance of a travel document will be accomplished in the reasonably foreseeable future.  Instead, petitioner relies on the fact that his detention has exceeded the presumptively reasonable six-month period established in *Zadvydas.*  He also argues that he no longer possesses his passport and visa and that the government "cannot seriously contend that [he]. . . is too dangerous to be released."  *See* Item 1, ¶¶ 13, 15, 18.  However, DHS records indicate that DHS is in possession of petitioner's expired passport and his visa and copies of both were submitted to the Consulate of the Ivory Coast in

---

[3]For example, DHS statistical reports show that in fiscal year ("FY") 2009, a total of 24 aliens were repatriated to the Ivory Coast; in FY 2010, 31 aliens were repatriated to the Ivory Coast; and in FY 2011, 27 aliens were repatriated to Ivory Coast.  Item 4-1, ¶ 20 (citing DHS Yearbook of Immigration Statistics: 2011, Table 41: http://www.dhs.gov/yearbook-immigration-statistics-2011-3).

support of the request for travel documents. *See* Item 4-2, pp. 17-21. Meanwhile, the government has acted reasonably in extending petitioner's detention after deciding that an alien convicted of a sex offense would endanger the community if released. *See Muhury v. Tryon,* 2011 WL 6016606 (W.D.N.Y. December 2, 2011).

Several cases decided within this district have found the habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere passage of time, insufficient to meet the petitioner's burden to demonstrate no significant likelihood of removal under the Supreme Court's holding in *Zadvydas*. *See, e.g., Khaleque v. Dep't of Homeland Sec.*, 2009 WL 81318, at *4 (W.D.N.Y. Jan. 9, 2009) (petitioner failed to meet initial burden where the only evidence relied upon was the fact that the Consulate had not responded positively to the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would not be issued); *Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future."); *Roberts v. Bureau of Immigration & Customs Enforcement*, 2007 WL 781925, at *2 (W.D.N.Y. Mar. 13, 2007) (petitioner who did not present evidence that his country would not provide travel documents did not meet initial burden of proof); *Singh v. Holmes*, 2004 WL 2280366, at *5 (W.D.N.Y. Oct. 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); *see also Juma v. Mukasey*, 2009 WL 2191247, at *3

(S.D.N.Y. July 23, 2009) (vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future …." *Zadvydas*, 533 U.S. at 701. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## **CONCLUSION**

For the foregoing reasons, the petition is denied, and the case is dismissed. This dismissal is without prejudice to file another petition should it subsequently appear that removal is no longer reasonably foreseeable. *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

\s\ John T. Curtin
───────────────────────────
JOHN T. CURTIN
United States District Judge

Dated: May 1, 2013
p:\pending\2012\12-11781.apr252013